**FILED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

AUG 1 6 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) <br> DEA Exhibit N-113 – a silver Apple iPhone S ) <br> Model A1633 with black rubber case,, ) <br> CURRENTLY LOCATED AT the ) <br> Sacramento FBI Office located at 2001 ) <br> Freedom Way, Roseville, California ) | Case No. <br><br> **2:17-SW- 740** EFB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

### SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846; 18 U.S.C. § 1956 | Manufacturing Marijuana, Conspiracy to Manufacture Marijuana, Money Laundering |

The application is based on these facts:

### SEE AFFIDAVIT, attached hereto and incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested
☐ under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Laura G. Giouzelis, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8-16-2017

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
ROGER YANG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br>DEA Exhibit N-113 – a silver Apple iPhone S<br>Model A1633 with black rubber case,<br>CURRENTLY LOCATED AT the Sacramento<br>FBI Office located at 2001 Freedom Way,<br>Roseville, California | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION<br>UNDER RULE 41 FOR A WARRANT TO<br>SEARCH DEVICES |

1.    I, Laura E. Giouzelis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

2.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices, as described more fully in Attachment A, attached hereto and incorporated by reference herein—currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B, attached hereto and incorporated by reference herein.

3.    I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since August of 2010. I was trained as an FBI Special Agent at the FBI Academy in Quantico, Virginia. At Quantico, I received specialized training in the methodology of general law enforcement and white collar and fraud criminal investigations. I am currently assigned to a Violent Crimes Squad of the Sacramento Division of the FBI. In my current assignment, I am responsible for

AFFIDAVIT
1

1  investigating Violent Crimes in the Eastern District of California. I have participated in federal
2  investigations involving credit card fraud, money laundering, identity theft, wire fraud, access device
3  fraud, and bank fraud offenses. I have performed law enforcement related tasks such as executing state
4  and federal search and arrest warrants, utilizing confidential sources, coordinating undercover
5  operations, and surveillance of subjects. I have executed search warrants that have involved the search
6  and seizure of financial instruments, computer equipment, and proceeds from a crime.

7      4.      The facts set forth in this affidavit are based on the following: my own personal
8  knowledge; knowledge obtained from other individuals during my participation in this investigation,
9  including other law enforcement officers; my review of records related to this investigation;
10 communications with others who have knowledge of the events and circumstances described herein; and
11 information gained through my training and experience. Because this affidavit is submitted for the
12 limited purpose of establishing probable cause in support of the application of a search warrant, it does
13 not set forth each and every fact that I or others have learned during the course of this investigation.

14
15                                                                  **RELEVANT STATUTES**

16     5.      Pursuant to Title 21, U.S.C. § 841(a)(1), it is unlawful for any person knowingly or
17 intentionally to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or
18 dispense, a controlled substance. Pursuant to Title 21, U.S.C. § 846, it is unlawful to conspire to commit
19 a violation of Title 21, U.S.C. § 841(a)(1). Both of these violations are felonies punishable by more than
20 one year's imprisonment.

21     6.      Pursuant to Title 21, U.S.C. § 856, it is unlawful to knowingly open, lease, rent, use or
22 maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing,
23 or using any controlled substance. It is also unlawful to manage or control any place, whether
24 permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and
25 knowingly and intentionally rent, lease, profit from, or make available for use, with or without
26 compensation, the place for the purpose of manufacturing, storing, distributing, or using a controlled
27 substance. This violation is a felony punishable by more than one year's imprisonment.

28     7.      Pursuant to Title 21, U.S.C. § 881(a)(7), all real property, including any right, title and

1   interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used,

2   or intended to be used in any manner or part, to commit, or to facilitate the commission of a violation of

3   Title 21 which is punishable by more than one year's imprisonment, is subject to forfeiture to the United

4   States.

5        8.     Pursuant to Title 18, U.S.C. § 1956(a)(2)(A), whoever transports, transmits, or transfers,

6   or attempts to transport, transmit, or transfer a monetary instrument or funds from a place outside of the

7   United States to or through a place inside the United States with the intent to promote the carrying on of

8   specified unlawful activity shall be sentenced to a fine of not more than $500,000 or twice the value of

9   the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is

10   greater, or imprisonment for not more than twenty years, or both.  Under Title 18, U.S.C. § 1956(h), it is

11   a crime to conspire to commit a violation of Title 18, U.S.C. § 1956(a)(2)(A).[1]

12        9.     Pursuant to Title 18, U.S.C. § 1957(a), whoever knowingly engages or attempts to engage

13   in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived

14   from specified unlawful activity shall be subject to imprisonment up to ten years.

15        10.     Pursuant to Title 18, U.S.C. § 981(a)(1), any property, real or personal, involved in a

16   transaction or attempted transaction in violation of section 1956, 1957 or 1960 of Title 18, United States

17   Code, or any property traceable to such property, is subject to forfeiture to the United States.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

20        11.     The property to be searched is (further described as the Devices):

21   •    DEA Exhibit N-147- Red Laptop SN/ 5CD6512H19

22   •    DEA Exhibit N-148 an iPad Serial Number DMPJKHNF18W

23   •    DEA Exhibit N-166  iPhone – Silver Apple iPhone with black rubber case

24   •    DEA Exhibit N-113 – a silver Apple iPhone S Model A1633 with black rubber case

25   •    DEA Exhibit N-132 four cellular telephones

---

[1] It should be noted that for purposes of this section of the money laundering statute, funds transferred to a place in the United States from or through a place outside the United States need not be proceeds of a specified unlawful activity (*United States v. Moreland*, 622 F.3d 1147, 1166-67 (9th Cir. 2010); *United States v. Cornelio-Legarda*, 381 Fed. Appx. 835, 841-42 (10th Cir. 2010)).

- DEA Exhibit N-133 two cellular telephone
- DEA Exhibit N-134 one cellular phone
- DEA Exhibit N-121 four cellular telephones and an electronic tablet
- DEA Exhibit N-122 one cellular telephone
- DEA Exhibit N-156 consisting of Black "BLU" smartphone , IMEI 356236053755963 with a white case, white iPhone Model A1533 IMEI 0138850062538875, black iPhone
- DEA Exhibit N-157 – a Sony Laptop, serial number 27556086-3003487
- DEA Exhibit N-158 iPad; and DEA Exhibit N-161 damaged white I-Phone, serial number DMPJ8URDKPH
- DEA Exhibit N-124 white iPhone with Serial Number S000347662
- DEA Exhibit N-125 one iPad with charging cable SSN EM000443564.

Each of the Devices was collected as evidence by DEA during Search Warrants executed on July 26, 2017, that were signed on July 24, 2017 by Magistrate Judge Carolyn Delaney.

12.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

13.     In August 2014, the DEA Sacramento District Office and the Elk Grove Police Department (EGPD) initiated a federal investigation of a criminal organization that was believed to be responsible for the cultivation and distribution of marijuana on a large scale.   The organization was believed to be purchasing homes in the Sacramento, CA region and converting them into indoor marijuana cultivation sites, and then trafficking the processed marijuana to other parts of the country, particularly the Eastern United States.   This investigation eventually identified Leonard YANG as one of the individuals responsible.   As part of this investigation, on September 14, 2016, the DEA, IRS-CI, EGPD and the Sacramento County Sheriff's Department (SCSD) executed seven federal search warrants on residences associated with the YANG indoor marijuana growing operation and arrested Leonard YANG and several other individuals pursuant to Title 21 federal drug violations.   In total, agents seized approximately 5,496

1   marijuana plants from the seven residences that were all converted into full-scale indoor marijuana grows.

2   Further investigation into Leonard YANG showed close ties to Xiu Ping Li. Xiu Ping Li was an investor

3   in YANG's 9501 Jeffcott Road, Wilton, California residence searched on September 14, 2016 and found

4   to contain 2,071 marijuana plants.  Follow up investigation revealed that Xiu Ping Li and her co-

5   conspirators were also operating large indoor marijuana grows.

6        14.    Search warrants for the residences listed below were signed by Magistrate Judge Carolyn

7   Delaney on July 24, 2017:

8        a)      7810 Elsie Avenue, Sacramento, California

9        b)      8638 Bradshaw Road, Elk Grove, California

10       c)      2860 Central Avenue, Roseville, California

11       d)      10315 Baseline Road, Elverta, California

12       e)      8967 Sonoma Valley Way, Sacramento, California

13       f)      4849 Ammolite Way, Elk Grove, California

14       g)      8114 Suarez Way, Elk Grove, California

15       h)      3433 La Cadena Way, Sacramento, California

16       i)      2725 52ND Ave, Sacramento, California

17       15.    The search warrant attached as Attachment C and incorporated by reference listed

18   evidence to be seized. The targets of this investigation include: Xiu Ping LI, a.k.a. Xiuping LI

19   (hereinafter X. P. LI), Gui Wen PAN (hereinafter G. PAN), Xiu Ru LI, a.k.a. Xiuru LI (hereinafter X. R.

20   LI), Yongjie LIU (hereinafter Y. LIU), Dao Zhong WEI (hereinafter D. WEI), Zutao LI (hereinafter Z.

21   LI), Shui Ping ZHENG (hereinafter S. ZHENG) Bi Yun LI (hereinafter B. LI) and You An LI

22   (hereinafter Y. LI).

23       16.    On July 26, 2017, Law Enforcement Officers conducted search warrants at the locations

24   above.  Subjects of the investigation, marijuana plants, digital devices, and other items were found and

25   seized as evidence as authorized under Attachment B of the Search Warrant signed on July 24, 2017.

26       17.    **7810 Elsie Avenue, Sacramento, California**: On July 26, 2017, Law Enforcement

27   Agents executed a search warrant at 7810 Elsie Avenue, Sacramento, California. Law Enforcement

28   Agents found X. R. LI and D. WEI inside 7810 Elsie Avenue, Sacramento, California. Law

1  Enforcement Agents also found over 1,200 suspected marijuana plants and over 9,000 grams of
2  suspected processed marijuana.  Additionally, Law Enforcement Agents seized *DEA Exhibit N-156*
3  *consisting of Black "BLU" smartphone , IMEI 356236053755963 with a white case, white iPhone*
4  *Model A1533 IMEI 0138850062538875, black iPhone*;  *DEA Exhibit N-157 – a Sony Laptop; DEA*
5  *Exhibit N-158 iPad*; and *DEA Exhibit N-161 damaged white I-Phone.*

6  18.   **8638 Bradshaw Road, Elk Grove, California**: On July 26, 2017, Law Enforcement
7  Agents executed a search warrant at 8638 Bradshaw Road, Elk Grove, California.  Law Enforcement
8  Agents conducted a knock and announce and X. P. LI, CHE HUANG, Y. J. LIU, and LI JUAN WANG
9  exited 8638 Bradshaw Road.  Law Enforcement Agents found over 900 suspected marijuana plants in
10 the residence.  Law Enforcement Agents also found and seized *DEA Exhibit N-132 four cellular*
11 *telephones*, *DEA Exhibit N-133 two cellular telephones*, and *DEA Exhibit N-134 one cellular phone*
12 within the premises of 8638 Bradshaw Road, Elk Grove, California.

13 19.   **10315 Baseline Road, Elverta, California**:  On July 26, 2017, Law Enforcement Agents
14 executed a search warrant at 10315 Baseline Road, Elverta, California.  Law Enforcement Agents found
15 Y. LI, TONY TANG, XIANG LIAN TANG, CHAUNBIN TANG, and KONG LI Tang. Agents found
16 over 1,100 marijuana plants in the structures on the premises of 10315 Baseline Road.  Additionally,
17 agents seized over 10,000 grams of suspected processed marijuana.  Also seized from 10315 Baseline
18 Road, Elverta, California were *DEA Exhibit N-121 four cellular telephones and an electronic tablet* and
19 *DEA Exhibit N-122 one cellular telephone*.

20 20.   **8114 Suarez Way, Elk Grove, California:** On July 26, 2017, Law Enforcement Agents
21 executed a search warrant at 8114 Suarez Way, Elk Grove, California.  Law Enforcement Agents found
22 GUANG ZHAO LI (G. LI) at the residence.  Law Enforcement Agents found over 250 marijuana plants
23 in 8114 Suarez Way.  G. LI signed a DEA Consent to Search a Toyota Rav4 with California License
24 Plate 7YBN312.  Law Enforcement Agents found *DEA Exhibit N-124 white iPhone with Serial Number*
25 *S000347662* in the van.  G. LI signed the Consent to Search the white iPhone with Serial Number
26 S000347662. Law Enforcement Agents found *DEA Exhibit N-125 one iPad with charging cable SSN*
27 *EM000443564.*

28 21.   **3433 La Cadena Way, Sacramento, California**: On July 26, 2017, Law Enforcement

1 Agents executed a search warrant at 3433 La Cadena Way, Sacramento, California. Law Enforcement

2 Agents found KONG LIANG LI inside 3433 La Cadena Way. Also found was indicia addressed to FU

3 LI and ZU GUI CHEN. Law Enforcement Agents also found *DEA Exhibit N-113 – a silver Apple*

4 *iPhone*. Agents also found over 400 suspected marijuana plants in the residence as well as hydroponic

5 growing chemicals at 3433 La Cadena Way.

6       22.    **2725 52nd Avenue, Sacramento, California:**  On July 26, 2017, Law Enforcement

7 Agents executed a search warrant at 2725 52nd Avenue, Sacramento, California. At the residence,

8 Agents found G. PAN in the residence. Agents also found over 900 suspected marijuana plants and

9 clones in the residence. Agents seized *DEA Exhibit N-147- Red Laptop serial number 5CD6512H19,*

10 *DEA Exhibit N-148 an iPad, DEA Exhibit N-166 iPhone* in the possession of G. PAN.

11                 **Experience with Drug Trafficking Schemes Using Such Devices**

12       23.    I know from similar investigations, and from information provided to me by other agents

13 with experience investigating this type of crime, that coordination is required between the different

14 people involved in the scheme. In this particular type of DTO, communication would be needed between

15 the buyers of the properties, the investors in the properties, the people managing groups of illegal

16 marijuana grow houses, the people managing the specific marijuana grow house, the distributors of the

17 illegally grown marijuana, and other people involved in the growing and cultivation of marijuana. The

18 DTO communicates information including growing status, location of members within the DTO,

19 payment for services, and other items requiring coordination or communication. This communication

20 can be in a variety of formats including text messages, phone calls, photographs or other images, and

21 other formats. These communications can be sent by a variety of methods including by text message, e-

22 mail, through social media messaging service, through other chat services, and by other methods.

23       24.    In addition to communications, records would be required operate this DTO. Records

24 include but not be limited to expense logs, customer lists, employee payment logs, and marijuana growth

25 logs. These records could be stored in multiple formats including text documents or various forms of

26 image documents. Records could also be in the form of stored photographs to document numbers of

27 marijuana plants, size of marijuana plants, money sent via a wire and other items. These records may

28 also be sent as communication.

25.     The communications and records listed above can be stored on multiple forms of digital media including but not limited to cell phones, smart phones, electronic pads, laptop computers, external flash drives, external storage disks, external hard drives, and desktop computers.  Records and other documents necessary to conduct the operations of the DTO could be stored on multiple forms of digital media including but not limited to cell phones, smart phones, electronic pads, laptop computers, external flash drives, external storage disks, external hard drives, and desktop computers.

26.     Based on my experience and conversations with other Law Enforcement Officers, this DTO may use a text and voice communication service called WeChat International Pte. Limited, a Chinese company. Based on the analysis of the devices seized during the September 14, 2016 search warrants, the people involved in the DTO use WeChat to communicate.  Many of the subjects arrested as a result of the Search Warrants executed July 26, 2017 are Chinese and requested the assistance a translator to communicate. It is believed by Law Enforcement Officers that communications, records, and other data in Chinese will be found on the cellular phones and other digital devices.

## TECHNICAL TERMS

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

1    downloading information from the Internet.  Wireless telephones may also include global

2    positioning system ("GPS") technology for determining the location of the device.

3    b)   Digital camera:  A digital camera is a camera that records pictures as digital picture files,

4    rather than by using photographic film.  Digital cameras use a variety of fixed and

5    removable storage media to store their recorded images.  Images can usually be retrieved

6    by connecting the camera to a computer or by connecting the removable storage medium

7    to a separate reader.  Removable storage media include various types of flash memory

8    cards or miniature hard drives.  Most digital cameras also include a screen for viewing

9    the stored images.  This storage media can contain any digital data, including data

10   unrelated to photographs or videos.

11   c)   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld

12   digital storage device designed primarily to store and play audio, video, or photographic

13   files.  However, a portable media player can also store other digital data.  Some portable

14   media players can use removable storage media.  Removable storage media include

15   various types of flash memory cards or miniature hard drives.  This removable storage

16   media can also store any digital data.  Depending on the model, a portable media player

17   may have the ability to store very large amounts of electronic data and may offer

18   additional features such as a calendar, contact list, clock, or games.

19   d)   GPS:  A GPS navigation device uses the Global Positioning System to display its current

20   location.  It often contains records the locations where it has been.  Some GPS navigation

21   devices can give a user driving or walking directions to another location.  These devices

22   can contain records of the addresses or locations involved in such navigation.  The Global

23   Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites

24   orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite

25   repeatedly transmits by radio a mathematical representation of the current time, combined

26   with a special sequence of numbers.  These signals are sent by radio, using specifications

27   that are publicly available.  A GPS antenna on Earth can receive those signals.  When a

28   GPS antenna receives signals from at least four satellites, a computer connected to that

antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g)  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

h)   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

28.   Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, PDAs, and Internet-accessing devices with IP address information. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.   I have spoken with FBI Information Technology Specialist (ITS) and Computer Forensic Examiner (FE) Alan Russell Schmidt, who has been a Forensic Examiner since 2006. FE Schmidt is specially trained in computer search and seizure and is certified by the FBI as a member of the FBI Computer Analysis Response Team (CART). FE Schmidt has been a member of CART since 2005 and has conducted numerous searches and seizures involving computers and computer data. FE Schmidt related information to me and/or confirmed information for me as noted below.

30.   Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including FE Schmidt, I know that data in digital form can be stored on a variety of systems, storage devices, or media, including hard disk drives, floppy disks, compact disks, magnetic tapes, flash drives, and memory chips. Some of these devices can be smaller than a thumbnail and can take several forms, including thumb drives, secure digital media used in phones and cameras, personal music devices, and similar items.

31.   Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, including FE Schmidt, I know that computers and digital devices are often used to store information, very much the same way paper, ledgers, files and file cabinets are used to store information. I know that it is common today for businesses to utilize computers to conduct their business and to store information related thereto. I also

know that it is common for individuals to have personal computers and to use these computers to conduct their personal affairs, their business affairs, and to store information related thereto. I know based on my training and experience, and the training and experience of other agents with whom I have consulted, including prior investigations specifically related to the investigation of identity theft and access card fraud, that subjects who are engaged in access card fraud commonly store information related to their activities on computers and digital devices.

32. Based on my training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from

1    operating system or application operation, file system data structures, and virtual memory

2    "swap" or paging files.  Computer users typically do not erase or delete this evidence,

3    because special software is typically required for that task.  However, it is technically

4    possible to delete this information.

5    d)    Similarly, files that have been viewed via the Internet are sometimes automatically

6    downloaded into a temporary Internet directory or "cache."

7    34.    Forensic evidence.  As further described in Attachment B, this application seeks

8    permission to locate not only electronically stored information that might serve as direct evidence of the

9    crimes described on the warrant, but also forensic evidence that establishes how the Devices were used,

10    the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic

11    electronic evidence might be on the Devices because:

12    a)    Data on the storage medium can provide evidence of a file that was once on the storage

13    medium but has since been deleted or edited, or of a deleted portion of a file (such as a

14    paragraph that has been deleted from a word processing file).  Virtual memory paging

15    systems can leave traces of information on the storage medium that show what tasks and

16    processes were recently active.  Web browsers, e-mail programs, and chat programs store

17    configuration information on the storage medium that can reveal information such as

18    online nicknames and passwords.  Operating systems can record additional information,

19    such as the attachment of peripherals, the attachment of USB flash storage devices or

20    other external storage media, and the times the computer was in use. Computer file

21    systems can record information about the dates files were created and the sequence in

22    which they were created.

23    b)    Forensic evidence on a device can also indicate who has used or controlled the device.

24    This "user attribution" evidence is analogous to the search for "indicia of occupancy"

25    while executing a search warrant at a residence.

26    c)    A person with appropriate familiarity with how an electronic device works may, after

27    examining this forensic evidence in its proper context, be able to draw conclusions about

28    how electronic devices were used, the purpose of their use, who used them, and when.

AFFIDAVIT                                    13

d)   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f)   I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

35.   Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36.   Manner of execution. Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion on to a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

1

2
## CONCLUSION

3       37.     I submit that this affidavit supports probable cause for a search warrant authorizing the

4   examination of the Devices described in Attachment A to seek the items described in Attachment B.

5       38.     It is respectfully requested that this Court issue an order sealing, until further order of the

6   Court, all papers submitted in support of this application, including the application and search warrant. I

7   believe that sealing these documents is necessary because the warrant is relevant to an ongoing

8   investigation of which possible targets remain unaware. Based upon my training and experience, I have

9   learned that criminals actively search online for criminal affidavits and search warrants and disseminate

10  them to other criminals as they deem appropriate. Often this sharing takes the form of posting the

11  affidavits and warrants publicly through online "carding" forums. Accordingly, premature disclosure of

12  the contents of this affidavit and related documents may have a significant and negative impact on the

13  continuing investigation and may severely jeopardize its effectiveness.

14

15                                          Respectfully submitted,

16

17                                          Laura E. Giouzelis
                                            Special Agent
18                                          Federal Bureau of Investigation

19

20  Subscribed and sworn to before me on: 8-16-2017

21

22  The Honorable Edmund F. Brennan
    UNITED STATES MAGISTRATE JUDGE
23

24

25

26  Approved as to form by AUSA ROGER YANG

27

28

AFFIDAVIT                                15

## **ATTACHMENT A**

The property to be searched is DEA Exhibit N-113 – a silver Apple iPhone S Model A1633 with black rubber case, which are currently located at the Sacramento FBI Office located at 2001 Freedom Way, Roseville, California.

## **ATTACHMENT B**

All records and communications on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 856, 21 U.S.C. § 881(a)(7), 18 U.S.C. § 1956(a)(2)(A), and 18 U.S.C. § 981(a)(1) since August 1, 2014, including:

   a. Information tending to identify the user of the device.

   b. Information relating to marijuana growth, processing, cultivation, storage, distribution, methods for growing, including but not limited to lists of information associated with the including: customer lists, employee lists, lists of cultivation houses, lists of distributors, lists of accounts, calendars or to-do lists, transaction methods.

   c. Real estate transactions including realtor, mortgage, investor, account information, address information, buyer information, seller information

   d. Travel itineraries or purchases of tickets for travel including but not limited to airline receipts, hotel confirmation and receipts, rental car confirmation and receipts, airline tickets, credit card/debit card receipts, maps or GPS searches for physical locations, or GPS information.

   e. Address books to consist of names, physical addresses, e-mail, social media contacts, chat site contacts, telephone numbers, nicknames, job titles, and business names.

   f. All conversations to include but not limited to text, online chat, online social media, and e-mail with discussions of marijuana growth, processing, cultivation, storage, distribution, methods for growing, ownership of real estate, and payment of bills, including but not limited to power consumption bills and capital outlays for chemicals, fertilizer, equipment, clones, and ventilation.

   g. Any form of recruitment or communication of investors to purchase marijuana cultivation houses, transporters of marijuana, distributors of marijuana, persons who cultivate marijuana in houses, persons or companies who provide material to grow marijuana including fertilizers and lights, persons or companies that modify houses to allow for marijuana cultivation.

   h. Income tax records to include local, state and federal returns and receipt of monies paid or monies received in any sort of employment. Items or records used to show employment and/or wage.

i. Photographs in any form depicting the subjects of the investigation and their criminal associates, and their assets and/or controlled dangerous substances in any form. Photographs depicting the storage and shipping of dangerous, illegal, or controlled substances.

j. Items evidencing the receipt of income from any source including Forms W2, 1098 and 1099, Federal and state income tax records and work papers, employment records, pay stubs, social security statements, business receipts, business books and records, journals and ledgers, receipts, invoices, sales of assets, real estate sale and purchase records, escrow records, bank records (including foreign accounts and related transactions), brokerage records, investment account statements, stock certificates, receipts documenting purchase and sale of stocks, contracts, purchase orders, estate records, loan records, letters of credit, notes payable and receivable, IOU's and other recordings of debts compromising evidence of loans and expenses, check, insurance documents, and bank statements.

k. Items tending to evidence money laundering activity to include records of currency transactions, foreign and domestic financial transactions, such as wire transfers, cashier checks and money orders, bank drafts and web searches and saved media on money laundering. In addition, customer lists, supplier lists, information about payments to or from co-conspirators, correspondence, notation logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when goods believed to be used in the cultivation of marijuana, were purchased, possessed, transferred, distributed, sold or concealed in whatever form.

l. Correspondence in any form of meeting times and locations for marijuana cultivation houses, transporters of marijuana, distributors of marijuana, persons who cultivate marijuana in houses, persons or companies who provide material to grow marijuana, real estate or mortgage meetings, and investors in any real estate and notes and list of attendees from any such meetings.

m. Items evidencing any landlord tenant or leaser leaseholder relationship including rental or lease applications, "walk through" documents, receipt books, rental ledgers, property descriptions, documents relating to rental income and expenses, landlord books, correspondence, credit reports, and eviction records.

n. Items including but not limited to documents, e-mail, conversations pertaining to loans and the obtaining of funds from lending institutions or private parties including loan applications, credit reports, Verification of Deposit forms, verification of rental status documents, correspondence to or from lending institutions, occupancy documents, verification of employment documents, accountant verification documents, and income documents.

o. Items evidencing the obtaining, transfer and/or concealment of assets and the obtaining, transfer, concealment and/or expenditure of money to include business books and records, invoices, receipts, records of real estate or securities transactions, escrow files, vehicle and vessel purchase records, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, wires, checkbooks, loan statements, work papers, and records reflecting the purchase of assets.

p. All records, documents, programs, applications or materials created, modified, or stored in any form that show the actual user(s) or owners of the computers or digital devices during the time the device was utilized to commit the crimes referenced above, including the web browsers history; temporary Internet files; cookies, bookmarked or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; record of social networking and online service usage; and software that would allow others to control the digital device suck as viruses.

q. All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital devices.

r. Any passwords, password files, test keys encryption codes, or other information necessary to access the computer equipment, storage devices, or data on any Device.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# ATTACHMENT C



AO 93 (Rev. 11/13) Search and Seizure Warrant

**SEALED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| 3433 La Cadena Way, Sacramento, California | ) Case No. **2 17 - SW - 6 5 0**   **CKD** |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-8, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ___8/7/2017___ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ___7/24/2017   1:05pm___   ___Carolyn Delaney___
                                                                                          *Judge's signature*

City and state:     ___Sacramento, California___          ___Carolyn K. Delaney, U.S. Magistrate Judge___
                                                                                          *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
        Signature of Judge                              Date

ATTACHMENT A-8

3433 La Cadena Way, Sacramento, California



3433 La Cadena Way, Sacramento, California, is described as a residence as a single story residence located on the north side of La Cadena Way. The exterior is comprised of tan colored stucco with brown colored trim with a clay color tile roof. The residence also contains a light cream colored garage door at the front of the residence. The numbers "3433" are affixed to the front of the residence just west of the garage door.

## ATTACHMENT "B" - (Items to be seized)

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by X. P. LI and his co-conspirators:

- Title 21 U.S.C. § 841(a)(1) – Manufacture, Possess with Intent to Distribute, and Distribution of marijuana;

- Title 21 U.S.C. § 846 – Conspiracy to Manufacture and Distribute marijuana;

- Title 21 U.S.C § 856 – Maintaining a place for Manufacture and Distribution of marijuana;

- Title 18 U.S.C. § 1956(a)(2)(A) - Money Laundering;

- Title 18 U.S.C. § 1956(h)- Conspiracy to Launder Money; and

- Title 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity.

Specifically, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search and seize are:

A.   Marijuana in various forms, to include: living plants, harvested plants and stalks, dried or drying plants, and processed marijuana.

B.   Marijuana seeds and/or marijuana plant clones.

C.   Any other controlled substances and/or contraband during service of this warrant.

D.   Equipment and tools used for the cultivation, storage, or processing of marijuana, including, but not limited to:

1)   Irrigation devices, garden hoses, water buckets, five gallon buckets, electronic timing devices, electronic watering devices, aerators, PVC pipe, water storage drums, water tanks, hose filter fittings, valves, water pumps, lights, timers, power packs, power cords, extension cords, generators, air conditioning units, fans, heat pumps, shovels, rakes, brush clearing equipment, handsaws, pruning shears, hand held sprayers, in line fertilizer/water tanks, herbicides, starter pots, planter pots, grow pots, alligator clips, zip-lock bags, rolling paper, cigarette packs, small medicine containers, glass and plastic vials, rolled up papers for holding seeds, sifters, digital scales and other weighing devices, drying screens, paper bags, pouches, backpacks, burlap bags, plastic storage containers;

2)   Books and/or magazines for growing marijuana, such as: High Times, Marijuana Growers Guides, Sinsemillia Tips, Marijuana Potency, Marijuana Botany, Marijuana, and other marijuana publications;

E.   United States currency over $2,000.

F.   Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notation logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed.

G.   Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

H.   Bank account records, wire transfer records, bank statements and records, money drafts, letters of credit, safety deposit keys and records, money wrappers, money containers, income tax returns, and records of financial transfers which reflect the money generated from the sale of narcotics in violation of 21 U.S.C. §§ 841 and 846.

I.   Any and all log-in records, sign-up sheets, and records or logs kept that demonstrate the persons authorized to access the safe deposits boxes identified in **Attachment A-10** when the safe deposit boxes and/or associated accounts were accessed, and who initiated the creation of the safe deposit boxes;

J.   Telephone paging devices, beepers, mobile phones (including the contents thereof including the phone number of the device, the listing of most recent calls, the directory of names and phone numbers, saved text messages, stored emails, and saved photographs and/or video clips (which includes saved photographs and/or video clips having to do with marijuana sales and/or marijuana production or persons associated with the marijuana sales and/or production), car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846 and/or 843(b).

K.   Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in narcotic trafficking activities.

L.   Items evidencing the receipt of income from any source including Forms W 2, 1098 and 1099, Federal and state income tax records and work papers, employment records, pay stubs, social security statements, business receipts, business books and records, journals and ledgers, receipts, invoices, sales of assets, real estate sale and purchase records, escrow records, bank records (including foreign accounts and related transactions), brokerage records, investment account statements, stock certificates, receipts documenting purchase and sale of stocks, contracts, purchase orders, estate records, loan records, letters of credit, notes payable and receivable,

IOU's and other recordings of debts comprising evidence of loans and expenses, checks, passbooks and deposit receipts, check registers and checkbooks, insurance documents, money orders, cashier's checks, bank drafts, wire transfers, and money drafts.

M. Items evidencing the obtaining, transfer, and/or concealment of assets and the obtaining, transfer, concealment and/or expenditure of money to include business books and records, invoices, receipts, records of real estate or securities transactions, escrow files, vehicle and vessel purchase records, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, checkbooks, loan statements, work papers, and records reflecting the purchase of assets.

N. Items relating to loans and the obtaining of funds from lending institutions or private parties including loan applications, credit reports, Verification of Deposit (VOD) forms, verification of rental status documents, correspondence to or from lending institutions, occupancy documents, verification of employment documents, accountant verification documents, and income verification documents.

O. Items evidencing any landlord tenant or leaser leaseholder relationship including rental or lease applications, "walk through" documents, receipt books, rental ledgers, property descriptions, documents relating to rental income and expenses, landlord books, correspondence, credit reports, eviction records.

P. Copies of any Currency Transaction Reports (CTRs), bank notification requirements for CTRs, schedules of currency activities, money orders, cashier checks, and wire transfers.

Q. Photographs, negatives, video tapes, films, undeveloped film and the contents therein, and slides depicting the subjects of the investigation and their criminal associates, their assets and/or controlled dangerous substances.

R. Items tending to identify the location where controlled substances and other evidence of narcotics trafficking may be found, to include records and keys for vehicles, storage facilities, residences, businesses, post office boxes, safe deposit boxes, and safes.

S. Items tending to establish the identity of persons in control of the premises being searched, to include rent receipts, utility bills, check books, bank account records, addressed envelopes, passports, residence keys, vehicle registrations, videos, exposed film and photographs.

T. Items tending to establish evidence of money laundering activity to include records of currency transactions, foreign and domestic financial transactions, such as wire transfers, cashier's checks and money orders, bank drafts, and published reference material on the subject of money laundering. In addition, customer lists, supplier lists, correspondence, notation logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when goods believed to be used in the cultivation of marijuana, were purchased, possessed,

transferred, distributed, sold or concealed in whatever form (handwritten, digital, saved on computer, etc.).

U.   Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations.

V.   Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the possession and/or distribution of controlled substances.

W.   Surveillance equipment to help protect their marijuana dispensary operations and for counter surveillance against law enforcement, including, but not limited to, surveillance cameras and monitors, anti-bugging devices, and devices used to detect the presence of wiretaps, recording devices, transmitters, and/or receipts or literature describing the same.

X.   Items records tending to show employment and/or wages.

Y.   Records showing the purchase, sale, lease, rental, installment sale of equipment that could be used to facilitate indoor marijuana cultivation; including, but not limited to, business records showing expenditures and receipts.

Z.   **Digital evidence as described below:**

1)   Computers, software, peripheral data storage devices, that may contain the items listed in this attachment items (records), and all other equipment/material/programs needed to review the contents of the computer (with law enforcement allowed to take the computer and related material for off-site inspection and allowed 120 days from the day of the search to examine the content of computer and related equipment to determine whether it contains items to be seized – unless extended by order of court).

2)   Any computer equipment or digital devices used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners that are capable of being used to commit or further the crimes referenced above, or to create, access, process, or store evidence, contraband, fruits, or instrumentalities of such crimes;

3)   Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes;

4)    Any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

5)    Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

6)    Any physical keys, encryption devices, dongles, or similar physical items which are necessary to gain access to the computer equipment, storage devices, or data;

7)    Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices, or data; and

8)    All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) or owners of the computers or digital devices during the time the device was utilized to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software (or alternatively, the lack of software that would allow others to control the digital device).

9)    All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital device.

10)    All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show contextual information necessary to understand the evidence, contraband, fruits, or instrumentalities described in this attachment.

11)    All evidence called for in other portions of this attachment that might be stored, created, recorded, or maintained in digital format.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| DEA Exhibit N-113 – a silver Apple iPhone S Model A1633 with black rubber case,, CURRENTLY LOCATED AT the Sacramento FBI Office located at 2001 Freedom Way, Roseville, California | ) ) ) ) ) |

Case No.  2 1 7 - SW -  7 4 0    EFB

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _8-30-2017_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐  for _____ days *(not to exceed 30)*  ☐  until, the facts justifying, the later specific date of _____.

Date and time issued:  _8-16-2017_
_at 11:00 AM_

Judge's signature

City and state:   Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____                          _____
Signature of Judge                                              Date

## **ATTACHMENT A**

The property to be searched is DEA Exhibit N-113 – a silver Apple iPhone S Model A1633 with black rubber case, which are currently located at the Sacramento FBI Office located at 2001 Freedom Way, Roseville, California.

**ATTACHMENT B**

All records and communications on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 856, 21 U.S.C. § 881(a)(7), 18 U.S.C. § 1956(a)(2)(A), and 18 U.S.C. § 981(a)(1) since August 1, 2014, including:

    a.  Information tending to identify the user of the device.

    b.  Information relating to marijuana growth, processing, cultivation, storage, distribution, methods for growing, including but not limited to lists of information associated with the including: customer lists, employee lists, lists of cultivation houses, lists of distributors, lists of accounts, calendars or to-do lists, transaction methods.

    c.  Real estate transactions including realtor, mortgage, investor, account information, address information, buyer information, seller information

    d.  Travel itineraries or purchases of tickets for travel including but not limited to airline receipts, hotel confirmation and receipts, rental car confirmation and receipts, airline tickets, credit card/debit card receipts, maps or GPS searches for physical locations, or GPS information.

    e.  Address books to consist of names, physical addresses, e-mail, social media contacts, chat site contacts, telephone numbers, nicknames, job titles, and business names.

    f.  All conversations to include but not limited to text, online chat, online social media, and e-mail with discussions of marijuana growth, processing, cultivation, storage, distribution, methods for growing, ownership of real estate, and payment of bills, including but not limited to power consumption bills and capital outlays for chemicals, fertilizer, equipment, clones, and ventilation.

    g.  Any form of recruitment or communication of investors to purchase marijuana cultivation houses, transporters of marijuana, distributors of marijuana, persons who cultivate marijuana in houses, persons or companies who provide material to grow marijuana including fertilizers and lights, persons or companies that modify houses to allow for marijuana cultivation.

    h.  Income tax records to include local, state and federal returns and receipt of monies paid or monies received in any sort of employment. Items or records used to show employment and/or wage.

i.  Photographs in any form depicting the subjects of the investigation and their criminal associates, and their assets and/or controlled dangerous substances in any form. Photographs depicting the storage and shipping of dangerous, illegal, or controlled substances.

j.  Items evidencing the receipt of income from any source including Forms W2, 1098 and 1099, Federal and state income tax records and work papers, employment records, pay stubs, social security statements, business receipts, business books and records, journals and ledgers, receipts, invoices, sales of assets, real estate sale and purchase records, escrow records, bank records (including foreign accounts and related transactions), brokerage records, investment account statements, stock certificates, receipts documenting purchase and sale of stocks, contracts, purchase orders, estate records, loan records, letters of credit, notes payable and receivable, IOU's and other recordings of debts compromising evidence of loans and expenses, check, insurance documents, and bank statements.

k.  Items tending to evidence money laundering activity to include records of currency transactions, foreign and domestic financial transactions, such as wire transfers, cashier checks and money orders, bank drafts and web searches and saved media on money laundering.  In addition, customer lists, supplier lists, information about payments to or from co-conspirators, correspondence, notation logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when goods believed to be used in the cultivation of marijuana, were purchased, possessed, transferred, distributed, sold or concealed in whatever form.

l.  Correspondence in any form of meeting times and locations for marijuana cultivation houses, transporters of marijuana, distributors of marijuana, persons who cultivate marijuana in houses, persons or companies who provide material to grow marijuana, real estate or mortgage meetings, and investors in any real estate and notes and list of attendees from any such meetings.

m. Items evidencing any landlord tenant or leaser leaseholder relationship including rental or lease applications, "walk through" documents, receipt books, rental ledgers, property descriptions, documents relating to rental income and expenses, landlord books, correspondence, credit reports, and eviction records.

n.  Items including but not limited to documents, e-mail, conversations pertaining to loans and the obtaining of funds from lending institutions or private parties including loan applications, credit reports, Verification of Deposit forms, verification of rental status documents, correspondence to or from lending institutions, occupancy documents, verification of employment documents, accountant verification documents, and income documents.

o.  Items evidencing the obtaining, transfer and/or concealment of assets and the obtaining, transfer, concealment and/or expenditure of money to include business books and records, invoices, receipts, records of real estate or securities transactions, escrow files, vehicle and vessel purchase records, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, wires, checkbooks, loan statements, work papers, and records reflecting the purchase of assets.

p.  All records, documents, programs, applications or materials created, modified, or stored in any form that show the actual user(s) or owners of the computers or digital devices during the time the device was utilized to commit the crimes referenced above, including the web browsers history; temporary Internet files; cookies, bookmarked or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; record of social networking and online service usage; and software that would allow others to control the digital device suck as viruses.

q.  All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital devices.

r.  Any passwords, password files, test keys encryption codes, or other information necessary to access the computer equipment, storage devices, or data on any Device.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.